UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEON MANSON,

    Petitioner,

v.                                                   Case No. 3:20-cv-133-J-34JBT

WILLIAM P. BARR, et al.,

    Respondents.
_____

## ORDER

### I. Status

Plaintiff Leon Manson initiated this action on January 13, 2020, by filing a pro se Petition for Writ of Habeas Corpus pursuant 28 U.S.C. § 2241 (Petition; Doc. 1). In the Petition, Manson challenges the lawfulness of his post-removal order of detention. Respondents filed a consolidated brief in opposition to the Petition, see Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (Response; Doc. 6), and attached the Declaration of Detention and Deportation Officer Janeé Aska (Aska Decl.). Manson filed a brief in reply to the Response. See Petitioner Sur-Reply to Respondent's Submission (Reply; Doc. 10). This case is ripe for review.

### II. Procedural History

Manson, who was born in the Bahamas and also appears to have potential citizenship in Jamaica, has been residing in the United States of America since 1975. Petition at 3; Aska Decl. at 2. On April 21, 2016, the Board of Immigration Appeals issued a final order of removal in light of Manson's criminal conviction for aggravated child abuse as well as previous convictions for drug possession and distribution. Petition at 1;

Response at 1; Aska Decl. at 2; State v. Manson, Case No. 11-11304CF10A (17th Jud. Cir. Ct., Broward Cty., Apr. 30, 2015). United States Immigration and Customs Enforcement (ICE) submitted travel document requests to the Bahamas and Jamaica in early 2016; however, both countries denied the requests. Aska Decl. at 2. On July 20, 2016, ICE released Manson on an Order of Supervision. Id.

ICE detained Manson again on June 2, 2019, and five days later ICE submitted another travel document request to the Bahamas. Id. On August 8, 2019, the Bahamas again denied the request. Id. ICE also attempted to obtain travel documents for Manson from Jamaica on October 23, 2019. Id. Jamaica denied that request and found that Manson was born in the Bahamas and was not a citizen of Jamaica. Id. Following that denial, ICE provided the Jamaican consulate in Miami, Florida with Manson's application to claim citizenship by decent, which the consulate ultimately denied on April 7, 2020. Id. at 2-3. That same month, on April 22, 2020, the United States Department of State (DOS) filed a Diplomatic Note with the Jamaican government requesting that it adjudicate Manson's citizenship application and to accept Manson based on his ties to the country. Id. at 3. The DOS also filed a Diplomatic Note with the Bahamian government requesting that Manson be returned to the Bahamas following an April 15, 2020 statement from the Attorney General for the Bahamas declaring that the Bahamas will accept criminal deportees from the United States with "the most tenuous connections to the Bahamas who only happen to have a Bahamian birth certificate." Id. Both Diplomatic Notes are currently pending.

### III. Governing Legal Principles

### A. Jurisdiction

Pursuant to 28 U.S.C. § 2241(c)(3), a person held in custody can petition for a writ of habeas corpus where the person alleges that he or she "is in custody in violation of the Constitution or laws or treaties of the United States." This section confers jurisdiction upon the federal courts to hear cases challenging the lawfulness of immigration-related detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003) (noting that federal courts have jurisdiction in habeas proceedings to review constitutional challenges to § 1226(c)).

### B. Relevant Immigration Law

The Due Process Clause of the Fifth Amendment provides in part that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V. It is beyond dispute that the Fifth Amendment entitles aliens to due process in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). Indeed, the Supreme Court has unequivocally stated that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Nevertheless, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore, 538 U.S. at 523.

Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C.S. § 1231(a)(2). After an order of removal is final, ICE is required to make every effort to remove the alien within a

reasonable time. Zadvydas, 533 U.S. at 701. The government may detain an alien beyond the removal period if he or she is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). While § 1231(a)(6) does not include a specific detention period, the Supreme Court in Zadvydas held that that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. The Supreme Court explained that:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. "Therefore, in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

### IV. Findings of Fact and Conclusions of Law

Manson alleges that Respondents violated his substantive due process rights and § 1231(a)(6) as interpreted by Zadvydas because they have detained him for over six

4

months and it is unlikely that the government can deport him in the reasonably foreseeable future. Petition at 6-8. In support of this claim, Manson contends that both he and the government have repeatedly and unsuccessfully attempted to obtain travel documents from the Bahamas and Jamaica. In light of both countries' refusal to accept him on multiple occasions, Manson maintains that his prolonged detention is unconstitutional. Id. In their Response, Respondents concede that Manson has met his burden of demonstrating that he has been detained over six months but argue that Manson has failed to establish that there is good reason to believe he will not be deported in the reasonably foreseeable future. Response at 5-7. According to Respondents, despite the Bahamas and Jamaica's prior denials of requests, DHS is currently working to obtain travel documentation from the Bahamas and Jamaica. Id. Respondents believe the Bahamian government's "recent loosening of government policy" cuts against Manson's allegations because this new policy increases the prospects of his removal. Id. at 6. Moreover, Respondents generally assert that the United States and Bahamian governments have a good diplomatic relationship and that the United States government has successfully removed approximately 313 people to that country in 2018 alone. Id. Based on this history, Respondents aver that Manson "has failed to demonstrate that his removal in the foreseeable future is unlikely." Id. In Manson's Reply, he asserts that in light of the Bahamas and Jamaica's consistent refusal to accept him and the current COVID-19 pandemic, he has established good reason to think there is no reasonable likelihood of removal in the foreseeable future. Reply at 3-14. Manson represents that he called the Bahamian consulate on June 26, 2020, and was informed that the Bahamas

were not going to accept him because of his lack of ties to the country and that they have informed the United States government of the same via letter. Id. at 3-4.

The Court finds that Manson has established a claim under Zadvydas, such that the burden shifts to Respondents to rebut this claim. It is undisputed that Manson has been detained in excess of six months. In fact, he has been detained for over a year at this point, during which the government has unsuccessfully attempted to remove him to the Bahamas and Jamaica on multiple occasions. Of specific import, the Court notes that by all accounts Manson has been cooperating with these requests and providing necessary documentation. In light of the limitations imposed in response to the COVID-19 pandemic and the fact that the Bahamas and Jamaica have each denied multiple requests to accept Manson, including during the period of Manson's current confinement, Manson has established "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. As such, the burden shifts to the Respondents to prove otherwise.

In support of their position, Respondents rely on the two pending Diplomatic Notes. However, Respondents fail to suggest why the response to the current Diplomatic Notes to the Jamaican government would be different than those received in the past. Indeed, based on Jamaica's prior denials, the prospects of a different decision seem slight; therefore, the Court finds the pending Diplomatic Note with Jamaica does not rebut Manson's claim. Regarding the Bahamas, Respondents rely on an April 15, 2020 statement from the Attorney General for the Bahamas, for which they have not provided documentation other than through Aska's declaration that it occurred, as evidence in support of the likelihood of Manson's removal in the foreseeable future. However, this

statement occurred three months ago, yet Manson remains detained. More importantly, the Court declines to rely on a hearsay statement of an individual Bahamian government official without corresponding legal support that the Bahamian government has actually adopted this change in policy. Additionally, Manson appears to be in a peculiar situation regarding his birthright and citizenship. Born of parents of Jamaican decent in the Bahamas but growing up almost entirely in the United States, Manson's citizenship status is muddled. Indeed, the responses from the Bahamas and Jamaica reflect as much. In light of Manson's detention spanning over thirteen months (more than double the six-month period Zadvydas prescribed), his unique citizenship status, the COVID-19 pandemic, and the Bahamas and Jamaica's prior refusal to grant multiple requests to accept him, the Court finds that Respondents have not rebutted Manson's showing that there is no reasonable likelihood that he will be removed in the foreseeable future. Accordingly, the Petition is due to be granted.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **GRANTED**.

2. Respondents are directed to **IMMEDIATELY RELEASE** Manson on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of July, 2020.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:
Leon Manson #091440685
counsel of record